UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOSE ANTONIO CASTELLANO SERRANO,

Petitioner,

v. Case No. 3:26-cv-2240-MMH-LLL

WARDEN, NORTH FLORIDA
DETENTION FACILITY and
U.S. ATTORNEY GENERAL,

Respondents.

---

# ORDER

## I. Status

Petitioner Jose Antonio Castellano Serrano, an immigration detainee, initiated this action by filing a pro se Petition for a Writ of Habeas Corpus (Doc. 1) on August 27, 2026. Castellano Serrano, a citizen of Cuba, was paroled into the United States on October 13, 1989. Doc. 7-1 at 2. Nearly ten years later, on March 22, 1999, Castellano Serrano was served with a final administrative order of removal. Id. at 2, 21. On January 25, 2026, United States Immigration and Customs Enforcement (ICE) detained Castellano Serrano following his arrest for controlled substance possession and drug paraphernalia possession. Id. at 2, 34.

The Federal Respondent filed a Response to Petition for Writ of Habeas Corpus (Doc. 7) with exhibits (Docs. 7-1 through 7-2). Castellano Serrano filed a Reply (Doc. 10). This case is ripe for review.

## II. Analysis

In his Petition, Castellano Serrano argues that he is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001), because he has been detained beyond the presumptively reasonable removal period and there is no significant likelihood of removal in the reasonably foreseeable future. See Doc. 1 at 6–8. Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. See Johnson v. Guzman Chavez, 594 U.S. 523, 543–44 (2021) ("And § 1231 explains what to do if the alien is ordered removed."); see also Deshati v. Noem, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025)[1] ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2).

[1] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

Nevertheless, in Zadvydas, 533 U.S. at 690, the Supreme Court held that indefinite detention of aliens raises serious constitutional concerns. Once an order of removal is final, ICE should make every effort to remove the alien within a reasonable time. Id. at 701. The government may detain an alien beyond the statutory removal period if he is, among other things, a criminal alien or the Attorney General has determined the alien is a risk to the community or unlikely to comply with the order of removal. 8 U.S.C. § 1231(a)(6). The Supreme Court in Zadvydas held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. Id. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed and the alien "'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,'" the burden then shifts to the Government to provide evidence sufficient to rebut that showing. Id. at 1052 (quoting Zadvydas, 533 U.S. at 701). Thus, "in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a significant likelihood of removal in the reasonably foreseeable future. Zadvydas, 533 U.S. at 701.

Here, there is no dispute that when Castellano Serrano filed this case, he had been in ICE custody for seven months following his order of removal. See Doc. 7 at 4 (stating that Castellano Serrano "has remained detained since January 25, 2026, for a total of 229 days"). Nevertheless, the Federal Respondent contends that the six-month period is tolled because Castellano Serrano refused to comply with ICE's attempts to remove him to Mexico. See id. at 4–5.

In support of its contention, the Federal Respondent asserts that on August 15, 2026, immigration officials served Castellano Serrano with a Notice of Removal to Mexico that he refused to sign. Doc. 7-1 at 5. The Federal Respondent also attaches a Notice of Removal to Mexico dated January 27, 2026. Id. at 6. Notably, the January 27th Notice does not contain a "Signature of Alien" line. Id.

Section 1231(a)(1)(C) explicitly provides for an extension of the removal period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or

acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). When addressing a Zadvydas claim, courts have applied § 1231(a)(1)(C) differently:

> Many courts conduct an analysis using the burden-shifting framework from Zadvydas, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Other courts contend that an alien's failure to cooperate precludes an analysis under Zadvydas altogether. Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period. In fact, a couple of courts covered both bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the Zadvydas standard.

Glushchenko v. U.S. Dep't of Homeland Sec., 566 F. Supp. 3d 693, 705–06 (W.D. Tex. 2021) (footnotes omitted). The Eleventh Circuit Court of Appeals has recognized that the six-month period may be tolled if the alien "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." Akinwale, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly

argue that there is no significant likelihood of removal.'" Singh v. U.S. Att'y Gen., 945 F.3d 1310, 1314 (11th Cir. 2019) (quoting Pelich v. Immigr. & Naturalization Serv., 329 F.3d 1057, 1060 (9th Cir. 2003)); see Vaz v. Skinner, 634 F. App'x 778, 782 (11th Cir. 2015)[2] ("Because Petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future if he cooperates with DHS and voluntarily signs for the travel document."); Oladokun v. U.S. Att'y Gen., 479 F. App'x 895, 897 (11th Cir. 2012) ("Oladokun fails to 'provide[ ] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future,'" because his "non-cooperation is the only barrier to his removal." (quoting Zadvydas, 533 U.S. at 701).

The Federal Respondent has not shown that Castellano Serrano's actions were akin to a "refus[als] to make timely application in good faith for travel or other documents necessary" for his removal or that his actions otherwise prevented his removal. 8 U.S.C. § 1231(a)(1)(C). It appears that the documents provided by the Federal Respondent are notices to Castellano

---

[2] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. Gov't Emps. Ins. Co., 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Serrano, not applications for travel documents or forms that would otherwise appear to assist in his removal. And the Federal Respondent does not explain how Castellano Serrano's refusal to sign the forms impeded ICE's ability to remove him. Without more, the Court cannot find that Castellano Serrano's refusal to sign the forms warrants tolling of the six-month period as urged by the Federal Respondent. Therefore, the Court finds Castellano Serrano's six-month period expired prior to the filing of this case.

The Court also finds that Castellano Serrano has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Indeed, Castellano Serrano has now been detained for approximately 9 months, but ICE has yet to remove him. He also contends that there is no repatriation agreement between Cuba and the United States that would allow ICE to remove him. See Doc. 10 at 7. Thus, the burden shifts to the Federal Respondent.

The Court finds that the Federal Respondent has not submitted evidence sufficient to rebut Castellano Serrano's showing that there is no significant likelihood of removal in the reasonably foreseeable future. The Federal Respondent has not provided any evidence to suggest that ICE has actually communicated with Mexico or any other third country regarding Castellano Serrano. Nor has the Federal Respondent demonstrated that any travel

documents have been sought—let alone obtained—for any country. Based on the evidence, or lack thereof, the Court finds the Federal Respondent has failed to show that there is a significant likelihood Castellano Serrano will be removed in the reasonably foreseeable future.

The Court addresses one final point in the Federal Respondent's Response. The Federal Respondent contends that Castellano Serrano is lawfully detained pursuant to § 1231(a)(6), which provides for the continued detention of noncitizens "who ha[ve] been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." See Doc. 7 at 8.

Indeed, it appears that Castellano Serrano has sustained multiple felony convictions in the span of 30 years: aggravated assault in 1997; cocaine possession in 2009; burglary of an unoccupied conveyance and grand theft in 2009; cocaine possession and possession of drug paraphernalia in 2010; and controlled substance possession in 2026.[3] Id. at 2. However, as another judge on this Court recently explained:

> [T]he law is clear—the government cannot use indefinite detention as a stand-in for removal when its removal efforts fail. What is more, there is a procedure for the continued detention of specially

[3] The Federal Respondent only attaches a copy of the judgment and sentence for the 1997 conviction. See Doc. 7-1 at 25–32. As evidence of the remaining convictions, the Federal Respondents refers the Court generally to a 102-page "rap sheet" that includes not only Castellano Serrano's convictions but also arrests that did not result in his conviction. See Doc. 7-2 at 1–102.

> dangerous aliens subject to removal, and the government chose not to invoke it. See 8 C.F.R. § 241.14(f). Faithful application of the law as it currently stands allows for only one result—the petitioner's release from custody. Reasonable minds may differ on the wisdom of that result, but changes to the law must come from Congress, not a federal judge.

Alvarez v. South Fla. Det. Facility, No. 2:26-CV-01088-SPC-NPM, 2026 WL 3204376, at *1 (M.D. Fla. Oct. 26, 2026). The government has available to it a process by which to detain "specially dangerous" aliens. See 8 C.F.R. § 241.14(f). The Federal Respondent fails to allege that such process has even been considered in this case.[4]

Accordingly, it is **ORDERED**:

1. Castellano Serrano's Petition for a Writ of Habeas Corpus (Doc. 1) is **GRANTED**. Respondents shall release Castellano Serrano **within 24 hours** of this Order. At least **five (5) hours** before releasing Castellano Serrano, Respondents shall provide Castellano Serrano with access to a telephone to arrange transportation from the detention facility. Castellano Serrano shall be subject to his preexisting OSUP.

2. Respondent Warden's Motion to Dismiss (Doc. 6) is **DENIED as moot**.

[4] The Federal Respondent's dangerousness argument is further undercut by the fact that since the entry of Castellano Serrano's order of removal in 1999, ICE has detained him only once for a three-month duration. See Doc. 7-1 at 34.

3. The **Clerk** is directed to terminate any motions, enter judgment granting the Petition, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of November, 2026.

Marcia Morales Howard
**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 11/3
c:
Jose Antonio Castellano Serrano, #935003196
Counsel of record